# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00085-CR

**Max Elliott Ray, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
## NO. D-1-DC-11-300233, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Max Elliott Ray was charged with sexually assaulting J.G. by penetrating her sexual organ with his finger and with his mouth without her consent. *See* Tex. Penal Code § 22.011(a)(1). At the conclusion of the trial, the jury found Ray guilty and imposed a punishment of 6 years' imprisonment. *See id.* § 22.011(f) (stating that offense is second-degree felony); *id.* § 12.33 (setting out permissible punishment ranges for second-degree felony). Shortly after his punishment was assessed, Ray appealed his conviction. We will affirm Ray's conviction but remand the case for a new punishment hearing.

## DISCUSSION

In two issues on appeal, Ray challenges the district court's judgment. First, Ray contends that his trial attorney provided ineffective assistance of counsel during the punishment portion of the trial. Second, Ray argues that the evidence was legally insufficient to support his conviction.

**Ineffective Assistance of Counsel**

As mentioned above, in his first issue, Ray urges that his trial attorney did not provide effective assistance of counsel during the punishment portion of the trial. For that reason, Ray asks this Court to sustain his first issue and to remand the case for a new punishment hearing.

In order to succeed on an ineffectiveness claim, a defendant must show that his attorney's "representation fell below an objective standard of reasonableness . . . under prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). When presenting an ineffectiveness claim, the defendant has the burden of overcoming the presumption that his "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Generally speaking, decisions regarding effectiveness must be based on the totality of the representation, *see Frangias v. State*, 392 S.W.3d 642, 653 (Tex. Crim. App. 2013) (noting that defendants are not entitled to error-free representation), and a direct appeal does not provide a useful way to present an ineffectiveness claim because the record for that type of claim is usually undeveloped, *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). However, a single error can render the representation ineffective if it "was egregious and had a seriously deleterious impact on the balance of the representation." *Frangias*, 392 S.W.3d at 653; *see also Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (explaining that even in circumstances in which attorney has not been given opportunity to clarify actions, courts may conclude that performance was ineffective if challenged conduct is "so outrageous that no competent attorney would have engaged in it").

During the punishment phase, one of the issues in dispute was whether Ray was eligible for community supervision. Under the Code of Criminal Procedure, a jury who has sentenced a defendant to prison may "recommend to the judge that the judge suspend the imposition of the sentence and place the defendant on community supervision," and a judge is required to "place the defendant on community supervision if the jury makes that recommendation in the verdict." Tex. Code Crim. Proc. art. 42.12, § 4(a); *see also id.* § 3g(a)(1)(H) (stating that general provision authorizing trial judge to set sentence aside and impose community supervision does not apply when defendant is convicted of crime of sexual assault). However, in order to be eligible for community supervision, certain statutory criteria must be met. *Id.* § 4(d). Of relevance to this case, the defendant must "file a sworn motion" "before the trial begins" stating "that the defendant has not previously been convicted of a felony in this or any other state," and the jury must enter a finding in the verdict "that the information in the defendant's motion is true." *Id.* § 4(d)(3), (e). Moreover, a defendant does not have to testify in order to establish his eligibility for community supervision, and his eligibility may be established by the testimony of others with personal knowledge relevant to the issue. *See Mansfield v. State*, 306 S.W.3d 773, 775-76 (Tex. Crim. App. 2010).

In this case, Ray's attorney did not file before trial a sworn statement establishing Ray's eligibility for community supervision; instead, Ray's attorney untimely filed an unsworn statement at the end of the guilt phase of the trial that requested community supervision but did not state that Ray had not been convicted of a felony in another state. *See* Tex. Code Crim. Proc. art. 42.12, § 4(e). Moreover, although Ray's counsel called 2 witnesses to testify about, among other topics, Ray's ability to comply with the general requirements of community supervision, his

3

attorney did not ask any of the witnesses questions regarding whether Ray was eligible for community supervision. Further, after the second witness finished testifying, Ray's attorney stated that the defense was resting, and the district court convened a bench conference, asked him whether he was asking for community supervision because "it has not yet been proven up," and informed him that Ray's eligibility for community supervision could still be established by testimony from someone who has personal knowledge of the matter.

Shortly after the end of the bench conference, Ray's attorney elected to call Ray to the stand to establish his eligibility. During his testimony, Ray did testify that he had no felony history, but during his cross-examination, Ray repeatedly stated that he believed that J.G. had consented. In light of this testimony, the State argued during its closing that Ray "talked his way out of [community supervision]. I imagine each and every one of you thought about it yesterday, that this may be a case that is worthy of probation. Why not? He is young, he served in the military. But then you heard him."

In its brief, the State agrees with Ray and urges this Court to sustain Ray's first issue. In particular, the State argues that "it is clear from the record that trial counsel's failure" to timely file a motion for community supervision and decision to rest its case during punishment without establishing Ray's eligibility "could in no way be considered trial strategy." Further, the State asserts that Ray's attorney compounded these errors "by failing to be prepared with a witness able to testify to [Ray]'s eligibility." Moreover, the State contends that Ray's attorney attempted to ameliorate these mistakes by calling Ray to the stand but that Ray's unprepared testimony "prejudiced [him] by destroying what had, up to that point, been a reasonable chance for [him] to get probation."

4

Based upon our review of the record, we agree with the State and with Ray that the errors that occurred during the punishment phase were egregious and that there is a reasonable probability that the result would have been different but for those errors. *See Strickland*, 466 U.S. at 688, 694; *Frangias*, 392 S.W.3d at 653. Accordingly, we sustain Ray's first issue on appeal.

**Legal Sufficiency of the Evidence**

In his second issue, Ray contends that the evidence presented was legally insufficient to support his conviction. Under the Penal Code, an individual commits sexual assault if he "intentionally or knowingly . . . causes the penetration of the anus or sexual organ of another person by any means, without that person's consent." Tex. Penal Code § 22.011(a)(1). Moreover, the Penal Code explains that the "without consent" element is satisfied if "the other person has not consented and the actor knows the other person is unconscious or physically unable to resist." *Id.* § 22.011(b)(3); *see Elliott v. State*, 858 S.W.2d 478, 485 (Tex. Crim. App. 1993) (explaining that if assent is not given and "actor knows that the victim's physical impairment is such that resistance is not reasonably to be expected, sexual intercourse is 'without consent'"). When presenting this issue, Ray does not contest the evidence showing that he performed the sexual acts alleged in the indictment; instead, Ray limits his challenge by stating that the evidence was insufficient to show that he knew that J.G. was unconscious or unable to physically resist.

Under a legal-sufficiency review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this analysis, an appellate court must bear in mind that it is the

factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make reasonable inferences "from basic facts to ultimate facts." *Id.* Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The testimony presented during the trial established that Ray and J.G. were friends as well as co-workers at a bar. At the time of the alleged assault, Ray was dating a woman named Kathryn Bickert, and J.G. had a boyfriend. On the night in question, Ray and J.G. met at their work to socialize with friends. Over the course of the evening, Ray and J.G. had several drinks. After a few hours, Bickert met up with Ray and J.G. at the bar. Prior to leaving the bar, J.G. asked Ray and Bickert if they would like to come to her house and play video games. Ray and Bickert agreed. Because Ray and J.G. had been drinking, Bickert drove the 3 of them to J.G.'s home in Ray's car. Although they played video games once they arrived at J.G.'s home, J.G. eventually went upstairs to go to sleep. After J.G. went to bed, Ray walked to J.G.'s room while Bickert continued to play video games. When Bickert noticed that Ray had left the room, she went looking for him.

In her testimony regarding these events, Bickert explained that she had never seen J.G. that intoxicated before and that J.G. was stumbling and slurring her words. In addition, Bickert related that after going to look for Ray, she found Ray in J.G.'s bedroom and saw him performing oral sex on J.G. and using his finger to penetrate J.G. Further, Bickert stated that J.G. was undressed

6

from the waist down, that she was not moving, that her arms appeared limp and placed along her side, and that she was "making noise, but not a lot of it." When describing the noises, Bickert said that it sounded like a "don't-wake-me-up type of thing." Further, Bickert testified that it did not appear to her that J.G. was engaging in a consensual sexual encounter. In addition, she related that she started yelling at Ray, that they both left J.G.'s home shortly thereafter, that Ray drove her to her car, and that Ray left after dropping her off.

In addition to Bickert's testimony, J.G. also testified regarding her recollection of the events. In her testimony, J.G. stated that she went to her bedroom to go to sleep after becoming very intoxicated. Further, she explained that she woke up to the sound of yelling coming from the first floor of her house and that after the yelling stopped, she felt someone get on top of her and start "poking at" her vagina. Moreover, she related that she attempted to roll over several times in an effort to stop what was happening but eventually passed out again. In fact, she said that she was only conscious at the time when she tried to roll over. Regarding the next morning, J.G. testified that she woke up early, noticed that she was naked from the waist down, and felt sore in her vaginal area. Further, she explained that when she went downstairs, she noticed Ray sleeping on the sofa but did not see Bickert. J.G. also related that she asked Ray what had happened but that he immediately gathered his stuff and left.

Although Ray acknowledges the testimony summarized above, he points to the testimony from the witnesses that he called during his defense who testified about events that they observed before Ray, Bickert, and J.G. left the bar. Specifically, Ray called Darrel Anderson and Keith Copeland who both explained that they saw Ray and J.G. flirting with each other at the bar, and Copeland further testified that J.G. told him that she was "lonely."

7

In addition to highlighting the testimony from his witnesses, Ray also attempts to undermine the testimony of J.G. and Bickert. Regarding J.G., Ray points to testimony from his witnesses explaining that J.G. appeared to be conscious and fully functioning at the bar even though J.G. testified that she was "in a black-out state," was "on autopilot," and was unable to recall events occurring at the bar "and a little bit at the house." Furthermore, Ray notes that J.G. did not testify that she needed any assistance throughout the evening, including going upstairs to her bedroom. Accordingly, Ray contends that J.G. may have consented but forgotten and that even if J.G. was unconscious at the time of the sexual encounter, she might have appeared conscious to him.

Similarly, Ray attempts to discredit the testimony of Bickert by pointing to testimony indicating that she was intoxicated during the relevant time and that she did not know whether J.G. had told Ray earlier in the evening that she wanted to have sexual relations with him. Further, Ray notes that Bickert did not call the police on the night in question and agreed to allow Ray to drive her to her car. In addition, Ray highlights the portions of Bickert's testimony in which she stated that after she confronted Ray, he began to physically assault her and shot a gun when driving her home, and he notes that no evidence was introduced showing that there were any reports made to the police by neighbors regarding either the yelling or the gun shot. Moreover, Ray mentions the portion of Bickert's testimony in which she stated that she had previously pressed charges against someone she was dating. Finally, Ray refers to testimony that Bickert gave before a grand jury in which she stated that she "honestly didn't know one way or the other" whether J.G. was enjoying the activity.[1]

---

[1] When asked about this statement during trial, Bickert explained that she had "known since the beginning that [J.G.] was unconscious and not moving when [she] saw her."

However, in light of the evidence summarized above as well as the reasonable inferences that the jury could have made from that evidence and given that the standard of review for legal-sufficiency challenges obligates appellate courts to review the evidence in the light most favorable to the verdict and to defer to the jury's resolution of conflicts in the testimony, *see Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 16-17, we cannot conclude that the evidence was legally insufficient to support Ray's conviction, *cf. Everson v. State*, No. 01-07-00510-CR, 2008 Tex. App. LEXIS 4834, at *14 (Tex. App.—Houston [1st Dist.] June 26, 2009, pet. ref'd) (mem. op., not designated for publication) (explaining that evidence that victim could not "remember whether she consented is not dispositive of her consent, nor does it make the [victim]'s testimony of her nonconsent so weak" as to render it insufficient and noting that decision is not unjust simply "because the fact-finder resolved conflicting views of the evidence of the complainant's nonconsent in the State's favor"). Accordingly, we overrule Ray's second issue on appeal.

**CONCLUSION**

Having overruled Ray's second issue on appeal, we affirm the portion of the district court's judgment convicting Ray. However, having sustained Ray's first issue and found that he was denied effective assistance of counsel during the punishment phase of the trial, we reverse the portion of district court's judgment regarding his punishment and remand the cause for a new punishment hearing. *See* Tex. Code Crim. Proc. art. 44.29(b).

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed in Part; Reversed & Remanded in Part

Filed:   August 26, 2014

Do Not Publish